IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL EDUCATION ASSOCIATION,<br>1201 16th Street, NW, #117,<br>Washington, DC 20036,<br><br>       Plaintiff,<br><br><br>       v.<br><br><br>FEDERAL LABOR RELATIONS AUTHORITY,<br>1400 K Street, NW<br>Washington, DC 20424<br><br><br><br>       Defendant. | Civil Action No.<br>1:19-cv-00284 |

## COMPLAINT

## INTRODUCTION

    This is a collateral attack brought by the Federal Education Association ("FEA") against the Federal Labor Relations Authority ("FLRA" or the "Authority") for the current majority's arbitrary and capricious actions in setting aside 9 Arbitration Awards from 5 different arbitrators. The Awards pertained to a total of 144 named individual Grievants, 6,000 FEA bargaining unit members, and FEA. These nine Awards resulted from five years of intense litigation.

This Complaint is based upon the demonstrated and unprecedented apparent bias of a majority of the Authority. This apparent bias is demonstrated wholly in the record of the Authority's published decisions, of which this Court can take judicial notice.

In their first 94 published cases, the current majority overruled 51 arbitrators who had held for the union. They overruled not a single arbitrator who had held for the Agency.

This Court can also draw the inference of apparent bias from these 9 particular cases, given the majority's arbitrary and capricious treatment herein and the backdrop of their first 94 published decisions.

In this case alone, the majority misconstrued what one arbitrator said. And they apparently ignored what 16 arbitration awards said regarding the facts and *res judicata*. Eight of those were Merits Awards that became final and binding many years ago.

The majority has denied FEA, its members, and its attorneys of Procedural and Substantive Due Process under the Fifth Amendment. The majority has exceeded their jurisdiction and mandate of Congress.

Unless they are reversed, the majority's actions will have a devastating impact on these 144 named Grievants and all of FEA's 6,000 bargaining unit members going forward.

This is not a typical FLRA case. The impact of the majority's setting aside these Awards goes far beyond attorneys' fees. The majority has erroneously set aside

millions of dollars in back pay and interest already paid to 117 named Grievants. And they have rendered the procedural "pre-collection" protections of the Debt Collection Act meaningless.

Worst of all, the majority has created a pretext for every federal agency to routinely violate the "pre-collection" due process guaranteed by the Debt Collection Act, 5 U.S.C. 5514, with impunity.

Courts have been very reluctant to review FLRA decisions. But this is an extraordinary case.

## PARTIES

1.  FEA is a labor organization and incorporated association based in Washington, D.C. FEA represents approximately 6,000 federal civilian employees who are teachers and educators with the Department of Defense Dependents School System (DoDDS), since renamed the Department of Defense Education Activity (DoDEA), which is based in Alexandria, VA. These educators are stationed all over the world in order to educate dependents of U.S. military personnel in Department of Defense overseas and stateside schools. William H. Freeman and Jan A. Freeman are in-house counsel for FEA.

2.  The Authority is a component of the Federal Labor Relations Authority (FLRA). The FLRA's organic statute is the Federal Service Labor-Management Relations (FSLMR) Statute (the Statute), 5 U.S.C. 7101-7135. The Statute provides a general framework for regulating labor management relations for the federal government. It grants federal employees the right to organize, provides for collective

bargaining, and defines Unfair Labor Practices (ULPs). The Authority is responsible for implementing the Statute through the exercise of adjudicatory, policy-making, and rulemaking powers. Under the Statute, the responsibilities of the Authority are performed by a three Member independent and bipartisan body. 5 U.S.C. § 7104. Two Members are appointed from the President's Party. One Member is appointed from the other Party. The Authority's role is analogous to that of the National Labor Relations Board in the private sector. *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 92-93 (1983). Although Congress specifically provided for Authority review of arbitration awards, Congress also made clear that the scope of that review is very limited. See H.R. Rep. No. 95-1717, at 153 (1978) (conf. rep.), reprinted in 1978 U.S.C.C.A.N. 2860, 2887 (Authority is authorized to review awards only "on very narrow grounds"). Thus, the Authority must give arbitrators substantial deference.

## THE UNDERLYING NINE ARBITRATION AWARDS

3. The first is a Procedural Arbitrability Award from Arbitrator Joseph M. Sharnoff, in Association Grievance 11-01, dated August 12, 2017. (Addendum hereinafter ADD, A58). Arbitrator Sharnoff held that an FEA Association Grievance involving 27 named Grievants with pay problems was arbitrable. DoDEA filed exceptions with the FLRA. Accordingly, the arbitration has been held in abeyance ever since.

4. The next eight are Fee Awards from four different arbitrators (Daniel F. Brent, John E. Sands, Christopher Miles, and Andree McKissick). (ADD A207, A248, A288, A368, A398, A428, A173, A148). These Awards resolved fee issues concerning a total of 117 named Grievants and spanning 5 years of litigation. Each was based on a Merits Award (ADD A164, A 193, A239, A279, A315, A391, A419, A148) in the same case, wherein each of the Arbitrators had already held that "Each Grievant had suffered Unwarranted or Unjustified Personnel Actions (UUPA's) under the Back Pay Act, 5 U.S.C. 5596." This amounts to *Res Judicata*.

## THE UNDERLYING TWO FLRA DECISIONS

### SHARNOFF

5. The majority set aside the Sharnoff Award on grounds that he had "exceeded his authority." According to the majority, Arbitrator Sharnoff had not limited himself to the issue of whether the Grievance was procedurally arbitrable: "By considering evidence concerning the parties' arbitral history and the merits of the instant grievance, and making findings regarding the merits of the instant grievance, and making findings regarding the propriety of the Agency's pay practices, the Arbitrator resolved an issue not submitted to arbitration." "More importantly, the Arbitrator stated that 'but for the … history of improper pay practices by the Agency,' he would have found the Grievance non-arbitrable because of its procedural deficiencies." *United States Department of Defense Education Activity (Agency) and Federal*

5

*Education Association (Union)* 0-AR-5312, 70 FLRA 863, No. 167 (September 25, 2018). (ADD A14, A15).

6. As Member DuBester's Dissent points out, the majority continued "its non-deferential treatment of arbitrators and their awards." And here the majority focused "on the Arbitrator's reasoning rather than his conclusion..." (ADD A17). The Dissent ties in to the 8 Fee Awards and points out that Arbitrator Sharnoff was simply doing his job in considering, for limited purposes, the long history of DoDEA's stonewalling and "'intentionally avoid[ing] fixing its broken compensation system by using [the Union's] attorneys' rather than the Agency's own, 'to identify and remedy [the Agency's] pay problems.'...But the Arbitrator's recognition of this factual context for the dispute does not improperly expand the extent of his award, which is limited to the issue of the grievance's arbitrability." (Id. at FN 6).

7. FEA would add that the majority bases its entire decision on a misconstruction of what Arbitrator Sharnoff wrote. As such, their decision was arbitrary, capricious, and an abuse of discretion.

## EIGHT FEE AWARDS

8. The Authority consolidated the 8 Fee Awards. The majority set each aside on grounds that the Fee Awards were contrary to law, i.e., the Back Pay Act, 5 U.S.C. 5596 and the Debt Collection Act: "The crux of the Agency's arguments in each case is that attorney fees may not be awarded because neither the DCA [Debt Collection Act, 5 U.S.C 5514] nor Article 45 [of the Collective Bargaining Agreement] provides

6

for attorney-fee awards and <u>an agency's recovery of debts</u> (in this case an overpayment of overseas allowances) from employees <u>does not constitute a 'withdrawal or reduction…of pay, allowances [,] or differentials.'</u>" *United States Department of Defense Education Activity U.S. Department of Defense Dependents Schools (Agency) and Federal Education Association (Union)*, 0-AR-5124, 0-AR-5218, 0-AR-5226, 0-AR-5263, 0-AR-5267, 0-AR-5281, 0-AR-5282, 0-AR-5283, 70 FLRA 718, No. 143 (July 16, 2018). (ADD A18-A20). [Emphasis added].

9. Member DuBester's Dissent is compelling: "In the <u>underlying merits awards</u>, arbitrators find--and the Agency admits--that the Agency has not only failed to properly pay its teachers for decades; it has also erroneously collected alleged overpayments of pay, benefits, or allowances -- alleged overpayments resulting from the very same pay issues. And <u>in every underlying merits award</u>, every arbitrator finds that the Agency has taken various actions without complying with the Debt Collection Act [DCA]. Specifically, it is undisputed that the Agency 'repeatedly and chronically' <u>seized payments</u> that had been made to bargaining unit teachers without adequate notice…The Agency also does not contest that it <u>deducted amounts from wages</u>…" "Bypassing the record, and misreading applicable law, the majority summarily concludes that the Union is not entitled to attorney fees…the majority's opinion is contrary to fact and law…Accordingly, <u>each arbitrator</u> interprets the Back Pay Act (BPA), the DCA, the parties' agreement, and the record, and <u>finds</u> that the Agency's  multiple failures to properly pay the grievants resulted in the <u>withdrawal or reduction in pay, allowances, or differentials under the BPA</u>." [Emphasis added].

At FN 12: "The Agency did not file exceptions to the merits awards, and therefore, did not except to the merits awards' findings that the Agency's violations of the collective bargaining agreement and the DCA resulted in withdrawal of the grievants' pay <u>under the BPA</u>...the Agency may not attempt to relieve itself from liability in the fee awards by relitigating findings that <u>the Arbitrators already made in their merits awards, and which are now final and binding</u>. Further, the fee awards do not clarify or modify the merits awards in a way that gives rise to the deficiencies alleged in the Agency's exceptions. Because the Agency's argument actually challenges the merits awards, it is untimely." [Emphasis added]. "As Arbitrator John E. Sands finds, the Agency 'raises an absurd argument.'" "At this very late stage of the proceeding, the Agency's attempt to avoid paying fees is utterly baseless. The majority's willingness to embrace the Agency's effort is patently wrong." (ADD A21-A23).

10. FEA would add that the majority's decision goes far beyond attorneys' fees. Back pay, interest, and fees under the Back Pay Act are inextricably intertwined. A "withdrawal or reduction in pay" triggers all three at the same time:

"(1) An employee... who...is found...to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of...pay...(A) is entitled...to...(i) an amount...employee normally would have earned or received... <u>and</u> (ii) reasonable attorney fees...(2)(A) An amount payable under paragraph (1)(A)(i)...shall be payable with interest." (5 U.S.C. 5596). [Emphasis added].

11. In other words, there is no entitlement to back pay, interest, or fees unless there has been a withdrawal or reduction in pay.

12. The majority held that none of the 117 named Grievants had withdrawals from their pay. As such, all 117 who have already been paid millions of dollars in back pay and interest are no longer entitled to it. The majority's decision frees DoDEA to initiate Debt Collection Proceedings for every dollar. And it provides a pretext for DoDEA to illegally collect it without any of the procedural "pre-collection" safeguards provided by the Debt Collection Act.

13. Their decision provides a pretext for DoDEA to illegally collect from all 6,000 bargaining unit members with impunity. According to the majority: "A union is thus eligible for BPA remedies...only to the extent it has been able to prove that grievants suffered an actual loss of pay to which they are legally entitled. Agency attempts to recoup moneys that it actually overpaid grievants, however, do not constitute unwarranted or unjustified personnel actions that result in the withdrawal or withholding of pay under the BPA." (ADD p. A20, p. 720). As such, DoDEA will not have to pay interest on illegal collections until FEA is able to meet its newly established burden. Not only must FEA prove money has been withdrawn from pay without prior due process. But now, FEA will have to prove the debts were invalid as well.

14. Their decision provides a pretext for DoDEA to ignore the Debt Collection Act's fundamental requirement that DoDEA "prove" a debt before collecting it.

15. Their decision provides a pretext for every federal agency to do the same.

16. The majority's decision erroneously alters the most fundamental requirement of the Debt Collection Act: that it is an Agency's burden to "prove" a debt...not the alleged debtor's burden to "disprove."

## JURISDICTION

17. Jurisdiction is undoubtedly the critical issue in this case. Under 5 U.S.C. § 7123(a)(1) of the Statute, there is no judicial review of Authority decisions that resolve exceptions to arbitration awards, unless the [Authority's] [o]rder involves [a ULP]. The pertinent legislative history of the Statute provides: In light of the limited nature of the Authority's review, the conferees determined that it would be inappropriate for there to be subsequent review by the court of appeals in such matters. See H.R. Rep. No. 95-1717, at 153 (1978) (conf. rep.), reprinted in 1978 U.S.C.C.A.N. 2860, 2887 (Authority is authorized to review awards only "on very narrow grounds" (ADD A28 at FN 117).

18. The basic nature of the review scheme was explained in *Griffith v. FLRA*, 842 F.2d 487, 490-95 (D.C. Cir. 1988). The Court essentially determined that judicial review was precluded except as to claims of constitutional violations and statutory jurisdictional limitations.

## JURISDICTION HERE IS ROOTED IN THE MAJORITY'S APPARENT DEMONSTRATED BIAS

## 51 TO ZERO

19. Table 1 at ADD A1-A5 summarizes the Current Authority's first 94 published decisions. The 94th issuance is Arbitrator Sharnoff's case. Column 1 reflects the FLRA Issuance number. Column 2 reflects the parties. "U versus A" means the Union brought the action to the Authority. It means the Union did not prevail either in (1) an Arbitration, (2) with a Regional Director of the FLRA, or (3) with an FLRA Administrative Law Judge in an Unfair Labor Practice. It can also mean that the Union is bringing the action directly to the Authority in a negotiability determination. Column 3 reflects the decision maker: (1) an Arbitrator below, (2) an FLRA Regional Director below, (3) an FLRA Administrative Law Judge below, or (4) The Authority in a negotiability determination. Column 4 reflects the prevailing party in the Authority's decision. Column 5 reflects whether a majority of the Authority overruled the decision maker below.

20. In the first 94 cases before the current Authority, the Union prevailed only 10 times. In each, the Union had prevailed below. Each was on insurmountable procedural grounds. Six times, the Agency had missed filing deadlines. One time, the Agency had considered an expired letter of reprimand. One time, the Agency had not excepted all independent grounds. One time, the Authority had no jurisdiction. The remaining decision was an expedited review where the circumstances could not be ascertained.

21. In the first 94 cases before the current Authority, the Agency prevailed 83 times. The decision maker below was overruled 59 times...each time in favor of the Agency.

22. In the first 94 cases before the current Authority, an arbitrator was overruled 51 times...each time in favor of the Agency.

23. In the first 94 cases before the current Authority, not a single arbitrator who ruled for the Agency was overruled.

24. An FLRA Administrative Law Judge was overruled four times...each time in favor of the Agency. A Regional Director was overruled four times...each time in favor of the Agency. In five Authority Decisions regarding negotiability, the Agency prevailed five times.

25. Essentially, the Union never prevails.

26. As Member DuBester repeatedly points out in his dissents, the pattern is clear. The majority routinely issues truncated opinions. If the decision is based on "facts," they cherry-pick a fact to rely upon. If there is no such fact, they misconstrue one. If the decision is based on law, they misconstrue the law. If the decision is contrary to FLRA precedent, they overturn the precedent. They continue their non-deferential treatment of arbitrators and their awards. Member DuBester's many Dissents are very instructive. His expertise in Federal Labor Law is unparalleled.

27. The demonstrated apparent bias of the current majority is unprecedented.

12

28. Table 2 at ADD A6-A9 summarizes the <u>G. W. Bush Authority's</u> published decisions in its first 94 cases. The first 94 were selected to show a comparison with the current Authority. In the first 94 cases before the G.W. Bush Authority, an Arbitrator was overruled only 11 times…five times in favor of the Agency, 3 times in favor of the Union, 3 were split. An FLRA Administrative Law Judge was overruled only one time.

29. Table 3 at ADD A10-A13 summarizes the <u>Obama Authority's</u> first 94 published decisions. Again, the first 94 were selected to show a comparison with the current Authority. In the first 94 cases before the Obama Authority, an Arbitrator was overruled 16 times…12 times in favor of the Agency and 4 times in favor of the Union. An FLRA Administrative Law Judge was overruled 6 times…2 times in favor of the Agency, 2 times in favor of the Union, and 2 were remanded.

30. The G.W. Bush and Obama Authorities embraced their very limited roles in overseeing the process.

## <u>THE FLRA'S OWN GUIDE TO ARBITRATION CORRECTLY SUMMARIZES THE AUTHORITY'S VERY LIMITED JURSDICTION</u>

31. The following is taken directly from the FRLA's Arbitration Guide: (ADD A24-A57)

"2.4 Grounds for Review Section 7122(a) of the Statute provides, in pertinent part: If upon review [of exceptions to an arbitration award] the Authority finds that the award is deficient – (1) because it is contrary to any law, rule, or regulation; or (2) on other grounds similar to those applied by [f]ederal courts in private[-]sector

labor-management relations; the Authority may take such action and make such recommendations concerning the award as it considers necessary, consistent with applicable laws, rules, or regulations. In other words, the Authority will review awards to determine whether they are contrary to law, rule, or regulation, or whether they are deficient on other grounds similar to the grounds applied by federal courts in private-sector labor cases.

In addressing the grounds on which an arbitration award can be found deficient, it is important to recognize the context of the Authority's review. Although Congress specifically provided for Authority review of arbitration awards, <u>Congress also made clear that the scope of that review is very limited.</u>117 <u>Thus, the Authority gives arbitrators substantial deference</u> [Emphasis added] and will set aside or modify their awards only when excepting parties establish that the awards are deficient on one of the specific grounds set forth in § 7122(a) of the Statute. C.F.R. § 2425.6(e)(1).

2.5 Contrary to Law or Regulation Under § 7122(a)(1) of the Statute, the Authority will find an award deficient if the excepting party demonstrates that the award is contrary to law or regulation. In reviewing questions of law raised by an excepting party, the Authority reviews the legal issue presented "de novo" – without deference to the arbitrator's findings regarding the law – <u>but with deference to the arbitrator's underlying factual findings</u> [Emphasis added] [unless those findings are shown to be "nonfacts," .........................................

2.6 Private-Sector Grounds Section 7122(a)(2) of the Statute states that an arbitration award may be found deficient on "grounds similar to those applied by federal courts in private[-]sector labor-management[-]relations" cases. The private-sector grounds are narrow, and <u>it is difficult for parties to establish that an award is deficient on these grounds.</u> [Emphasis added].

2.6 (a) <u>Denial of a Fair Hearing</u> The Authority will find an award deficient on the ground that an arbitrator failed to conduct a fair hearing when a party demonstrates that the <u>arbitrator refused to</u> hear or <u>consider pertinent and material</u> evidence...[Emphasis added].............................................................

2.6 (d) Arbitrator Exceeded Authority. An arbitrator exceeds his or her authority when the arbitrator fails to resolve an issue submitted to arbitration, resolves an issue not submitted to arbitration, disregards specific limitations on his or her authority, or awards relief to persons who are not encompassed by the grievance. <u>The Authority, like the federal courts, gives arbitrators substantial deference in determining what issues were submitted to arbitration.</u> [Emphasis added]. Further, where the parties have stipulated the issue for resolution, <u>arbitrators do not exceed their authority by addressing any issue that is necessary to decide the stipulated issue or by addressing any issue that necessarily arises from issues specifically included in the stipulation.</u> [Emphasis added].

2.6 (e) Award Based on Nonfact (Challenges to Factual Findings) To establish that an award is based on a nonfact, the excepting party must demonstrate that a central fact underlying the award is clearly erroneous, but for which the arbitrator would have reached a different result.

2.6 (f) Award Fails to Draw Its Essence from CBA (Challenges to Contract Interpretation) When a party wants to challenge an arbitrator's interpretation of a CBA, the appropriate argument to make is that the award fails to draw its "essence" from the CBA. However, this is another situation in which the Authority gives great deference to the arbitrator. [Emphasis added]. In this connection, the Authority will find that an arbitration award fails to draw its essence from the CBA only when the appealing party establishes that the award: (1) cannot in any rational way be derived from the agreement; (2) is so unfounded in reason and fact and so unconnected with the wording and purposes of the agreement as to manifest an infidelity to the obligation of the arbitrator; (3) does not represent a plausible interpretation of the agreement; or (4) evidences a manifest disregard of the agreement. Generally, the Authority has found that an award failed to draw its essence from the CBA when the award was expressly contrary to the CBA.

32. At Footnote 117, the FLRA Arbitration Guide acknowledges the very narrow jurisdiction envisioned by Congress. 117 See H.R. Rep. No. 95-1717, at 153 (1978) (conf. rep.), reprinted in 1978 U.S.C.C.A.N. 2860, 2887 (Authority is authorized to review awards only "on very narrow grounds"). (ADD A28).

## THE DEVASTATING EFFECT

33. A "major object of the legislation [the Statute]…is extending the benefits of arbitration in labor relations from the private to the public sector." *Griffith v. FLRA*, 842 F.2d. 487, paragraph 26 (D.C. Cir. 1988).

34. If the Union can never prevail, a prudent Union will never go to the expense of arbitration. If Arbitrators know every Award for a Union will be overruled, prudent Arbitrators would never put themselves in the position of accepting the case. If they

accept the case, the Arbitrators know they will be overturned if they rule for the Union.

## THIS COURT HAS JURISDICTION

35. The basic nature of the review scheme was explained in *Griffith,* at 490-95. There, the Court of Appeals essentially determined that judicial review in District Court was precluded except as to claims of constitutional violations and statutory jurisdictional limitations.

36. In *Griffith,* the NTEU sought judicial review in District Court of an FLRA decision affirming an arbitrator's denial of an employee's within grade increase. The D.C. Circuit held that the provisions of the FSLMR Statute (5 U.S.C. 7123) allowing judicial review of arbitration decisions applied only to arbitration awards that involve Unfair Labor Practices. However, the Court identified the two grounds for review that could be brought in U.S. District court in a collateral attack.

## THIS COURT'S JURISDICTION IS BASED ON PROCEDURAL DUE PROCESS UNDER THE FIFTH AMENDMENT

## PROCEDURAL DUE PROCESS REQUIRED

37. An unbiased tribunal is the most basic requirement of Due Process. Due process requires an impartial tribunal that ensures neutrality in adjudicative proceedings. See *Jordan v Massachusetts*, 225 U.S. 167, 176 (1912) and *Marshall v.*

*Jerrico, Inc.*, 446 U.S. 238, 242 (1980). A "'fair trial in a fair tribunal is a basic requirement of due process'...This applies to administrative agencies which adjudicate as well as to courts. Not only is a biased decisionmaker constitutionally unacceptable, but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin*, 421 U.S. 35, 46 (1975), citing *In re Murchison*, 349 U.S. 133, (1955), *Gibson v. Berryhill*, 411 U.S. 564 (1973) and *Tumey v. Ohio*, 273 U.S. 510 (1927).

38. "Decisionmakers violate the Due Process Clause and must be disqualified when they act with an 'unalterably closed mind' and are 'unwilling or unable' to rationally consider arguments." *Air Transp Ass'n of Am, Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011), quoting *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1170, 1174 (D.C. Cir. 1979).

39. The majority's decisions setting aside 9 different Arbitration Awards here show their apparent bias against FEA bargaining unit members and FEA. This apparent bias is demonstrated wholly in the record. This Court can also draw the inference of apparent bias given the majority's arbitrary treatment herein and the backdrop of the current majority's first 94 published decisions.

## THIS JURISDICTION IS CLOSELY ASSOCIATED WITH THAT PROVIDED BY *GRIFFITH V. FLRA*

40. *Griffith* involved Substantive Due Process, but a similar analysis should apply for Procedural Due Process.

## THIS COURT'S JURISDICTION IS ALSO BASED ON *GRIFFITH V. FLRA* AND SUBSTANTIVE DUE PROCESS

### THE SHARNOFF GRIEVANTS' PROPERTY INTERESTS

41. The 27 named Grievants in the Sharnoff arbitration have Fifth Amendment rights to Procedural and Substantive Due Process. Their property interest is money DoDEA owes them for underpayments as well as the money DoDEA illegally collected from their paychecks. (As presented in FEA's proffer to Arbitrator Sharnoff, see Award, ADD A100, p. 43). (Also see Award ADD A59, p. 2 for the nature of the Association's Grievance: "Failure to Pay"). (And see Award ADD A101, p. 44: "The fact that the Agency failed and/or refused to provide...the reasons why funds were deducted from the employees' pay checks..."). They have a property interest in the alleged overpayments that were illegally collected until the Agency proves they do not. And DoDEA still has not done so.

### THE 117 GRIEVANTS' AND FEA'S PROPERTY INTERESTS

42. The 117 named Grievants in the 8 Fee Awards have Fifth Amendment rights to Procedural and Substantive Due Process. Their property interest is the back pay and interest 4 different arbitrators have already awarded them and they have already been paid in 8 different Merits Awards. (See McKissick 07-01 Merits Award

ADD A147, p. 40, Miles 09-01 Merits Award ADD A164, p. 1, Brent 07-05 Merits Award ADD A197, p. 6, Brent 08-03 Merits Award ADD A240, p. 2, Brent 09-01 Merits Award ADD A279, p. 1, Sands 07-03 Merits Award ADD A354, p. 40 and specifically for each Grievant, p. 27, 29, 31 at FN, 32, 33, 36, 38, and 39, Sands 08-01 Merits Award ADD A392, p. 2, and Sands 10-01 Merits Award ADD A419, p. 1).

43. Unlike Ms. Griffith's prospective promotion, the 117 Grievants here have already been awarded and paid the back pay and interest. In terms of *Griffith*, they received their promotion (back pay and interest) many years ago. Since there is no entitlement to back pay or interest unless there has been a withdrawal or reduction in pay, (see BPA quote above), the majority has effectively taken away the right to all of it, i.e., deprived the Grievants of something they already had.

44. Just like with Sharnoff, for those of the 117 who suffered illegal debt collections, they have a property interest in alleged overpayments until the Agency proves they do not. And DoDEA still has not done so.

45. FEA and the 117 Grievants have a property interest in the attorneys' fees 4 arbitrators have already awarded them in 8 different Fee Awards. (See McKissick 07-01 Fee Award ADD A148, p. 1, 8, 14, and 16, Miles 09-11 Fee Award ADD A172, p. 20, Brent 07-05 Fee Award ADD A207, p. 30, Brent 08-03 Fee Award ADD A248, p. 29, Sands 07-03 Fee Award ADD A368, p. 13, Sands 08-01 Fee Award ADD A398, p. 12, and Sands 10-01 Fee Award ADD A428, p. 12.). Unlike Ms. Griffith's prospective promotion, the Grievants and FEA had already been awarded the fees. Now the majority has deprived the Grievants and FEA of the right to that property.

## THIS COURT HAS EXERCISED THIS TYPE OF JURISDICTION BEFORE

46. The D.C. District Court has exercised this type of jurisdiction. In addition to *Griffith*, see e.g., *American Federation of Govt. Employees v. Pope*, 808 F. Supp. 2d 99 (D.D.C. 2011) now Chief Judge granting judicial review of Constitutional Claim where the FLRA was alleged to have demonstrated "a deliberate flouting of the law" resulting in acts of "grave unfairness." That case involved a ULP, but it was a collateral attack in District Court based on Due Process. There was a summary judgment for the FLRA, but the Court did exercise jurisdiction.

47. Under *Griffith*, with allegations similar to those in *American Federation of Govt. Employees v. Pope*, a plausible Constitutional claim leads to jurisdiction. If a property interest is involved, the Court decides whether Due Process has been violated. Under 5 U.S.C. 706, Due Process is violated if the decision below was "arbitrary, capricious, an abuse of discretion, or contrary to law."

## THIS COURT'S JURISDICTION IS ALSO BASED ON *LEEDOM V. KYNE*, 358 U.S. 184 (1958), AND *ULTRA VIRES*

48. *Griffith* also explained that administrative agencies cannot exceed their jurisdiction.   When Congress passed the Federal Service Labor-Management Relations Statute, 5 U.S.C. 7101-7135, they envisioned very narrow grounds for the Authority's review of Arbitration Awards.  See H.R. Rep. No. 95-1717, at 153 (1978)

(conf. rep.), reprinted in 1978 U.S.C.C.A.N. 2860, 2887 (Authority is authorized to review awards only "on very narrow grounds," referenced at ADD A28, FN 117). These very narrow grounds are outlined above.

49. In light of the limited nature of the Authority's review, Congress found it inappropriate for there to be subsequent judicial review in most circumstances. *Overseas Education Association v. FLRA*, 824 F. 2d 61 (D.C. Cir. 1987). (citing H.R. Conf. Rep. No. 1717, 95th Cong., 2d Sess. 153, reprinted in 1978 U.S. Code Cong. & Ad. News, 2723, 2860).

50. But Congress could not have intended the kinds of results here...nine to zero...especially in light of the nature of these decisions and against the backdrop of 51 to zero.

51. It is well settled that an administrative body must follow its own rules and regulations when it conducts a proceeding which can deprive an individual of some benefit or entitlement. See *Vitarelli v. Seaton*, 359 U.S. 535 (1959). Here alone, the majority exceeded their own rules and statutory mandate in 9 separate cases involving 5 separate arbitrators.

52. The majority also acted *ultra vires*, which is closely associated with the concept of *Leedom*: "Following the reasoning of *American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902), and its progeny, the case law in this circuit is clear that judicial review is available when an agency acts *ultra vires*...When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Aid Association for the Lutherans v. United*

*States Postal Service*, 321 F. 3d 1166 (D.C. Cir. 2003). See also *Chamber of Commerce v. Reich*, 74 F. 3d 1322 (D.C. Cir. 1996) and *Dart v. United States*, 848 F. 2d 217, 221 (D.C. Cir. 1988): "judicial review is favored when an agency is charged with acting beyond its authority."

## THIS COURT HAS EXERCISED THIS TYPE OF JURISDICTION BEFORE

53. Note that the D.C. District has exercised this type of jurisdiction many times. See e.g. *Aid Association, Chamber of Commerce,* and *Dart* above.

54. Without judicial review in these cases, the 27 Grievants in Sharnoff and the 117 Grievants and FEA in the 8 Fee cases will be wholly deprived of a meaningful and adequate means of vindicating their rights to review of the Authority's decisions.

55. Under the *Leedom* analysis, the Court decides whether the FLRA exceeded their jurisdiction or mandate of Congress. If it did, the decision is overruled if it is arbitrary, capricious, or contrary to law under 5 U.S.C. 706.

## UNDER *LEEDOM* AND *ULTRA VIRES*, THE MAJORITY EXCEEDED THEIR OWN JURISDICTION AND STATUTORY MANDATE IN SETTING ASIDE THE SHARNOFF AWARD

56. Ironically, the majority set aside the Sharnoff Award on the grounds that he had "exceeded his authority" (ADD A14).

57. As Member DuBester's Dissent points out, the majority continued "its non-deferential treatment of arbitrators and their awards." And here the majority focused

"on the Arbitrator's reasoning rather than his conclusion..." (ADD A17). In other words, the majority faulted Arbitrator Sharnoff's "sources" in interpreting the CBA. However, "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of America v. Gulf Navigation Co.*, 363 U.S. 574 (1960). And an arbitrator "is confined to the interpretation and application of the collective bargaining agreement..." but "He may of course look for guidance from many sources..." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960).

58. FEA would add that 2.6 (d) of the FLRA's Guide to Arbitration (ADD A53) provides: "An arbitrator exceeds his or her authority when the arbitrator fails to resolve an issue submitted to arbitration, resolves an issue not submitted to arbitration, disregards specific limitations on his or her authority, or awards relief to persons who are not encompassed by the grievance. <u>The Authority, like the federal courts, gives arbitrators substantial deference in determining what issues were submitted to arbitration.</u> [Emphasis added] (ADD A53-A54). "Further, where the parties have stipulated the issue for resolution, <u>arbitrators do not exceed their authority by addressing any issue that is necessary to decide the stipulated issue or by addressing any issue that necessarily arises from issues specifically included in the stipulation.</u>" [Emphasis added]. (ADD A54).

59. In Sharnoff, DoDEA had raised only one real issue: the affirmative defense of laches. (ADD A76, A80, p. 19, 23). As such, Arbitrator Sharnoff had the <u>duty</u> to address it. Had he not addressed the issue, DoDEA would certainly have accused him of not providing a fair hearing.

## UNDER *LEEDOM* AND *ULTRA VIRES*, THE MAJORITY EXCEEDED THEIR JURISDICTION AND STATUTORY MANDATE IN SETTING ASIDE THE 8 FEE AWARDS

60. The majority set aside the 8 Fee Awards on the grounds that the Fee Awards were "contrary to law." (ADD A19).

61. But again, 2.5 (ADD A29) of the FLRA's Guide to Arbitration: Under § 7122(a)(1) of the Statute, the "Authority will find an award deficient if the excepting party demonstrates that the award is contrary to law or regulation. In reviewing questions of law raised by an excepting party, the Authority reviews the legal issue presented 'de novo' – without deference to the arbitrator's findings regarding the law – <u>but with deference to the arbitrator's underlying factual findings</u>..." [Emphasis added].

62. Each of the 4 arbitrators in each of the 8 underlying Merits Awards had already held that each of the educators had suffered "Unwarranted or Unjustified Personnel Actions" (UUPA's) resulting in the withdrawal or withholding of pay under the Back Pay Act.

63. These are both legal and factual findings.

64. As Member DuBester says, the majority bypassed the record. Each case involved wildly different sets of facts and wildly different relief for the Grievants. Almost all, if not all, Grievants were awarded back pay and interest for "underpayments." Many Grievants were awarded interest for Debt Collection Act violations as well.

65. The majority short-circuited the process. First, they consolidated all 8 cases. Then they bypassed the extensive record before them which included at least 32 different Briefs, 8 different Merits Awards, 8 different Fee Awards, and countless exhibits and attachments. They misconstrued all 8 Association Grievances as only "Debt Collection" cases. The record shows that every one of the facts they recited was wrong. And in four paragraphs of "analysis," they set aside 8 Fee Awards and 4 different Arbitrators. (See Dissent: "...majority summarily concludes..." (ADD A21, p. 721, and "ignoring the clear record..." p. 722-23, FN 19).

66. The majority exceeded its authority by not limiting their basis for review of the arbitral awards to "grounds similar to those applied by Federal Courts in private sector labor-management relations." 5 U.S.C. 7122(a)(2). Under that standard, the factual findings made by an arbitrator are absolutely non-reviewable. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001). Although the majority purported to set aside the arbitration decisions because the Awards ostensibly violated law, it was only able to do so by *sub silentio* rejecting the

arbitrators' factual findings that withdrawals from each Grievant's pay had occurred. And these factual findings had already been established in the 8 Merits Awards as well.

67. As such, the majority violated a clear and mandatory provision of its organic statute.

68. The majority has gravely misinterpreted the Back Pay Act and Debt Collection Act and provided precedent for every federal Agency to do the same. (See above). That Congress would entrust such "sweeping authority to a minor three-member commission with quite restricted expertise is, when one ponders the matter, utterly inconceivable." *U.S. Dep't of Treasury v. FLRA,* 43 F.3d 682 D.C. Cir. 1994).

69. The Authority is entitled to "considerable deference" when interpreting and applying the Federal Service Labor-Management Relations Statute, its "own enabling statute." *Ass'n of Civilian Technicians v. FLRA*, 534 F.3d 772 at 776 (D.C. Cir. 2008). It receives no deference, however, when it "has endeavored to reconcile its organic statute…with a[nother] statute…not within its area of expertise." *Air Force v. FLRA*, 648 F.3d 841 at 846 (D.C. Cir. 2011) (quoting *Dep't of Veterans Affairs v. FLRA*, 9 F.3d 123, 126 (D.C. Cir. 1993).

## THIS IS NOT A TYPICAL FLRA CASE

70. The FLRA will almost certainly argue that judicial review of cases like this will "open the floodgates" in the Federal Courts. But this is an extraordinary case.

There are not many cases like this involving millions of dollars in back pay, interest, fees, and setting very dangerous precedent. There are no other cases like this involving 144 named Grievants, 9 different Arbitration Awards, and 5 different Arbitrators.

71. This is a collateral; attack, so a remand is not an option. But a simple remand would not accomplish anything. The majority could simply find another way to overrule these 5 arbitrators. They have already threatened to do so in the eight fee cases based on a notion of "sovereign immunity." They certainly could retaliate against FEA for filing this action. These Authority decisions must be reversed.

## AFTER ASSERTING JURISDICTION, THIS COURT SHOULD REVERSE THE TWO AUTHORITY DECISIONS

72. Member DuBester's dissents in both cases are compelling, and they are incorporated herein by reference. (ADD A17, A21-23). His many dissents in other cases highlight the majority's "continuing...non-deferential treatment of arbitrators and their awards." See e.g., *United States Environmental Protection Agency and American Federation of Government Employees*, 70 FLRA 1033 at 1038, (Dec 21, 2018).

## STANDARD OF REVIEW

73. The Administrative Procedure Act, 5 U.S.C. 706, provides this Court with the authority to "(2) hold unlawful and set aside agency action, findings, and

conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with the law; (B) contrary to constitutional right...or...(C) in excess

of statutory jurisdiction, authority or limitations..."

## THE MAJORITY'S DECISION IN SHARNOFF WAS ARBITRARY, CAPRICIOUS, NOT IN ACCORDANCE WITH THE LAW, CONTRARY TO A CONSTITUTIONAL RIGHT, *ULTRA VIRES,* AND IN EXCESS OF STATUTORY JURISDICTION, AUTHORITY AND LIMITATIONS

74. Again, Member DuBester's dissent is compelling and incorporated herein

by reference.

75. And the majority's lynchpin is a misconstruction (actually two separate

misconstructions) of what Arbitrator Sharnoff wrote: (1) "Further, he [Arbitrator

Sharnoff] stated that '*but for* the...history of improper pay practices by the Agency,'

the grievance <u>would be</u> [emphasis added] non-arbitrable." (2) "More importantly, the

Arbitrator stated that 'but for the...history of improper pay practices by the Agency,'

he <u>would have found</u> [emphasis added] the Grievance non-arbitrable because of its

procedural deficiencies." *United States Department of Defense Education Activity*

*(Agency) and Federal Education Association (Union)* 0-AR-5312 70 FLRA 863, No.

167 (September 25, 2018). ADD A14, p. 863 at FN 8 and ADD A15, p. 864 at FN 26,

27.

76. Arbitrator Sharnoff actually wrote: "Thus, the Arbitrator notes that the

Association's processing of AG 11-01 <u>in many respects arguably could be</u> [emphasis

added] considered as constituting grounds for upholding the Agency's request to have the grievance dismissed as non-arbitrable *but for* the overwhelmingly compelling 23-year history of improper pay practices..." (Sharnoff Award ADD A100-A101, p. 43-44).

77. In other words, Arbitrator Sharnoff says he "arguably could have" dismissed FEA's Grievance. He did not say he "would have." And he even qualified that statement with "in many respects."

## THE MAJORITY CREATES A CATCH 22 WHERE AN AGENCY ALWAYS WINS ON APPEAL

78. There is nothing else Arbitrator Sharnoff could or should have done. The majority puts Arbitrator Sharnoff and every arbitrator to come in an absurd position. DoDEA's only defense was the equitable theory of laches. But the majority precludes the Arbitrator from considering evidence regarding the reasons for delay. And if the Arbitrator refuses to consider and evaluate pertinent and material evidence regarding the affirmative defense of laches, the Arbitrator has not provided a fair hearing to the Agency. See FLRA Guide to Arbitration 2.6 (a) (ADD A51).

79. Either way, the Agency wins on appeal. FEA cannot go forward with pending arbitrations until this procedural arbitrability "Catch 22" is clarified by this Court. Neither can any prudent Union operating under the Statute.

## ARBITRATOR SHARNOFF DID ALL HE COULD DO AND NOTHING MORE

80. The procedural arbitrarily issue was raised by DoDEA on the grounds of laches. Arbitrator Sharnoff limited his decision to that issue: "The Arbitrator intends the discussion herein to relate solely to the Agency's procedural claim that AG 11-01 is not arbitrable. Nothing stated herein is intended, nor should it be implied, to address directly, or to resolve, any of the claimed individual violations raised by the Association in AG 11-01...The Arbitrator in this proceeding on arbitrability, makes no findings with respect to the validity of any individual claims. The merits of these individual claims hereby is remanded to the parties..." (ADD A100, p. 43). Arbitrator Sharnoff retained jurisdiction to resolve any issues on the merits. (id.).

81. But according to the majority, Arbitrator Sharnoff, "By considering evidence concerning the...merits...the Arbitrator resolved an issue not submitted to arbitration." (ADD A15, p. 864). This is wrong on so many levels. Arbitrator Sharnoff clearly did not reach the merits. Even if he had, he clearly had the authority. FEA had grieved the merits of each individual's case. Arbitrator Sharnoff took a measured approach. He ruled on DoDEA's affirmative defense of procedural arbitrability and retained jurisdiction to rule on the merits if required.

82. The Authority, like the federal courts, must give "arbitrators substantial deference in determining what issues were submitted to arbitration." "Further, where the parties have stipulated the issue for resolution, arbitrators do not exceed their authority by addressing any issue that is necessary to decide the stipulated issue or

by addressing any issue that necessarily arises from issues specifically included in the stipulation." See FLRA Arbitration Guide 2.6 (d) (ADD A54).

83. As Member DuBester's Dissent points out, here the majority focused "on the Arbitrator's reasoning rather than his conclusion..." (ADD A17). In other words, the majority faulted Arbitrator Sharnoff's "sources" in interpreting the CBA.

84. An arbitrator "is confined to the interpretation and application of the collective bargaining agreement..." but "He may of course look for guidance from many sources..." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960).

## THE MAJORITY'S DECISION IN 8 FEE AWARDS WAS ARBITRARY, CAPRICIOUS, NOT IN ACCORDANCE WITH THE LAW, CONTRARY TO A CONSTITUTIONAL RIGHT, *ULTRA VIRES*, AND IN EXCESS OF STATUTORY JURISDICTION, AUTHORITY AND LIMITATIONS

85. Again, Member DuBester's dissent is compelling and incorporated herein by reference.

## COLLATERAL ESTOPPEL AND *RES JUDICATA* ARE NOT THE SAME

86. Collateral estoppel and *res judicata* are not the same thing. Collateral estoppel involves the same issues and same parties but in different cases. *Res*

*judicata* involves the same issues and same parties in the same cases. The majority conflates the two.

87. According to the majority, "The Union also argues that because each Arbitrator found <u>in previous awards</u>, that the Agency had violated the BPA, the Agency is collaterally estopped from challenging the awards of fees <u>in these cases</u>" [Emphasis added] (ADD A20, p. 720). What the majority does not mention is that the "previous awards" were the Merits Awards "in these cases."

88. The majority would now require FEA to show "a causal connection between an unwarranted personnel action and a <u>withdrawal or reduction</u> in pay. allowances or differentials." [Emphasis added], (ADD A20, p. 720).

89. But seven of the underlying Merits Awards specifically state: "Each of the educators below has suffered 'Unwarranted or Unjustified Personnel Actions' (UUPA's) resulting in the <u>withdrawal or withholding</u> of pay under the Back Pay Act, 5 USC 5596..." (See Miles 09-11 Merits Award p. 1, ADD A164, Brent 07-05 Merits Award p. 5, ADD A197, Brent 08-03 Merits Award p. 2, ADD A240, Brent 09-01 Merits Award p. 1, ADD 279, Sands 07-03 Merits Award p. 40, ADD A354, Sands 08-01 Merits Award p. 2, ADD A392, and Sands 10-01 Merits Award p. 1, ADD A419).

90. Arbitrator McKissick, in 07-01, is the only arbitrator here who did not specifically reference "withdrawals or reductions" of pay in her Merits Award...the terms of art the majority would now absolutely require. That was because the Agency did not make these terms of art an issue in the Merits Phase of that case. But Arbitrator McKissick made it clear that DoDEA had violated the Back Pay Act: "The

32

Findings of Fact of the nineteen (19) Grievants are replete with omissions, delays and administrative errors resulting from problems involving Back Pay, Thrift Savings Plan (TSP), matching funds and lost earnings in violation of the Debt Collection Act and Article 45 of the Agreement and the <u>Back Pay Act</u>." [Emphasis added] (Merits Award p. 32 and 40, ADD A139 and A147). And in her Fee Award, Arbitrator McKissick specifically rejected DoDEA's argument that "withdrawals or reductions in pay" had not occurred. (See McKissick 07-01 Fee Award p. 4 and 5, ADD A151 and A152 for argument, and p. 15, ADD A162 for rejection of that argument and citing a "plethora" of cases).

91. FEA vigorously argued *res judicata* in all 8 Fee Petitions with the arbitrators and all 8 Exceptions with the Authority. (See each Fee Award referencing FEA's arguments and FLRA Decision referencing FEA's arguments regarding "collateral estoppel").

92. The 16 Arbitration Awards here bristle with citations to "withdrawals" of pay under the Back Pay Act. Some are referenced above.

93. The Merits and Fee Awards included here at the Addendum are in word searchable format. A Simple word search of "withdrawal" reveals all of them and the *res judicata* they represent.

94. Arbitrator Sands was very clear in his Fee Awards: "For DoDDS to argue now that no UUPA occurred has no basis in fact, smacks of bad faith, and arguably violates Rule 3.3 of the Model Rules of Professional Conduct 'Duty of Candor Toward the Tribunal.'" Arbitrator Sands characterized DoDEA counsel's actions as going

"...beyond bad faith and reflect[ing] an inappropriate punitive agenda." (ADD A375, A376, A378, p. 8, 9, 11, ADD A403, A405, A406, p. 6, 8, 9, ADD A433, A435, A436, p. 6, 8, 9).

95. Yet, the majority adopted DoDEA's argument and as the only basis for their decision.

## THE RECORD IN THE 8 FEE CASES SHOWS THAT THE FACTS AS RECITED BY THE MAJORITY ARE ALL WRONG

96. According to the majority, the Arbitrators (1) "ordered audits to ensure that the Agency had collected the proper amounts from the grievants," (2) that "The Arbitrators ordered the Agency to conduct multistage audits of certain categories of payments to, and collections from, the grievants to determine whether over-deductions occurred," and (3) that "While the parties engaged in continuing compliance measures to calculate exact amounts owed to either the government or the grievants, the Union submitted applications for attorney fees."

97. The record does not bear this out...indeed, it shows the opposite. As the Merits Awards show, "The 'full audits' could disclose other 'offsets,' underpayments, and UUPA's. DoDDS will refund with interest all amounts collected in violation of the Debt Collection Act ...these audits will enable FEA to perform their representational duties in verifying correct payment...None of the payments arising from these audits will be 'offset' by any alleged 'overpayments.' Any such 'overpayments' are outside the scope of this Arbitration, and must be collected

through separate proceedings in accordance with the Debt Collection Act and/or Article 45 of the CBA." [Emphasis added]. The Arbitrators even retained jurisdiction to ensure that any alleged "overpayments" were collected only "in separate proceedings." (See ADD A147, A170, A203, A246, A286, A356, A396, A426).

98. In short, it was only the procedural violations of the Debt Collection Act that FEA had grieved. DoDEA had garnished the Grievants' paychecks without proving the alleged debts. As it turned out, and as the record shows, the vast majority of the debts were invalid. (See e.g. McKissick 07-01 Merits Award ADD A133-A137, p. 26-30 and Sands 07-03 Merits Award ADD A339-A353, p 25-39). But any possible "validity" of debts was technically irrelevant. The other six Merits Awards were jointly drafted by FEA and DoDEA in order to save litigation expenses, so there was no specific reference to "invalid" debts.

99. And FEA had also grieved "underpayments." As it turned out, and as the record shows, the vast majority, if not all, of the grievants were "underpaid" as well. (id.)

100. According to the majority, "In none of those cases, had any Arbitrator awarded any backpay to any individual grievant." (ADD A19, p. 719). Again, this is simply not true. (See e.g. McKissick 07-01 and Sands 07-03 Merits Awards, ADD A119-A137, and Sands 07-03 Merits Award ADD A339-A353, p 25-39. The remaining Merits Awards were "jointly drafted" by the parties. (See Dissent, ADD A21, p. 721). Again, in order to save litigation expenses, the back pay amounts were not listed.

101. According to the majority, all of these cases involved "debts and LQA." This is simply not true as the Merits Awards show. Almost all, if not all, the Grievants were awarded back pay for "underpayments." And scores of the cases did not involve LQA. They involved other types of pay including TQSA, Regular Pay, RAT, Travel Pay, TSP, Retirement Pay, and Post Allowance. Some illegal garnishments were for "overpayments." But many were for bogus medical bills and even alimony which was no longer owed.

102. According to the majority, FEA had the burden of showing a "causal connection between an 'unwarranted or unjustified personnel action' and a 'withdrawal or reduction in pay, allowances, or differentials.'" But again, each of the 8 Merits Awards had already held that each Grievant had suffered Unwarranted or Unjustified Personnel Actions (UUPA's) under the Back Pay Act, 5 U.S.C. 5596.

## THE CASE LAW SUPPORT RELIED UPON BY THE MAJORITY DOES NOT EXIST

103. According to the majority, "The crux of the Agency's arguments in each case is that attorneys' fees may not be awarded because neither the DCA nor Article 45 provides for attorney-fee awards and an agency's recovery of debts...from employees does not constitute a withdrawal or reduction of...pay..." The majority cites two cases ADD A20, p. 720 at FN 18 in support of those propositions. Such

support is simply not in those two cases...they have nothing to do with the Debt Collection Act or debts.


## THE MAJORITY'S DECISION GOES FAR BEYOND ATTORNEYS' FEES

104. Again, back pay, interest and fees are inextricably intertwined. The majority gravely misinterprets the Back Pay Act. A "withdrawal or reduction in pay" triggers all three at the same time:

"(1) An employee... who...is found...to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of...pay...(A) is entitled...to...(i) an amount...employee normally would have earned or received... and (ii) reasonable attorney fees...(2)(A) An amount payable under paragraph (1)(A)(i)...shall be payable with interest." (5 U.S.C. 5596). [Emphasis added].

105. In other words, there is no entitlement to back pay, interest, or fees unless there has been a withdrawal or reduction in pay.

106. The majority held that none of the 117 named Grievants had "withdrawals" from their pay. As such, according to this erroneous decision, all 117 who have already been paid millions of dollars in back pay and interest are no longer entitled to it. The majority's decision frees DoDEA to initiate Debt Collection Proceedings all of it. And it provides a pretext for DoDEA to collect it without any of the procedural "pre-collection" safeguards provided by the Debt Collection Act.

107. Their decision provides a pretext for DoDEA to illegally collect from all 6,000 bargaining unit members with impunity. According to the majority: "A union

is thus eligible for BPA remedies...only to the extent it has been able to prove that grievants suffered an actual loss of pay to which they are legally entitled. Agency attempts to recoup moneys that it actually overpaid grievants, however, do not constitute unwarranted or unjustified personnel actions that result in the withdrawal or withholding of pay under the BPA." (ADD p. A20 p. 720). According to this erroneous decision, DoDEA will not have to pay interest on illegal collections until FEA is able to meet its new and bogus burden. Not only must FEA prove money has been withdrawn from pay without prior due process. But now, FEA will have to prove the debts were invalid as well.

108. Their decision frees DoDEA to ignore the Debt Collection Act's fundamental requirement that DoDEA "prove" a debt before collecting it.

109. Their decision provides a pretext for every federal agency to do the same.

110. Their decision erroneously alters the most fundamental requirement of the Debt Collection Act: that it is an Agency's burden to "prove" a debt...not the alleged debtor's burden to "disprove" it.

111. The FLRA is entitled to "considerable deference" when interpreting and applying the Federal Service Labor-Management Relations Statute, its "own enabling statute." It receives no deference, however, when it "has endeavored to reconcile its organic statute with another statute... not within its area of expertise." This is precisely what the majority has done here, and they have not succeeded.

## THE COMBINED EFFECT OF SHARNOFF AND THE FEE AWARDS

112. When the decisions in Sharnoff and the eight fee awards are combined, not only can DoDEA illegally collect from their 6,000 teachers, but DoDEA's defense of laches will preclude any sort of redress. The arbitrator will be overruled if he evaluates the reasons for delay. And he will be overruled for not providing a fair hearing if he does not.

## A SIMPLE REMAND WOULD ACCOMPLISH NOTHING

113. Member DuBester's many dissents make this clear. This is a collateral attack, so remand is not an appropriate remedy. But on remand, the majority could simply find another way to set aside these Arbitration Awards. They could misconstrue what the arbitrators said like they did here in Sharnoff. Or they could bypass other parts of the record like they did with the eight fee cases. Or they could misconstrue the law. They certainly could continue their "non-deferential treatment of arbitrators and their awards." (ADD A17). They certainly could retaliate against FEA for filing this action.

114. The majority has already threatened to find another way based on their notion of "sovereign immunity": "However, it is important to note that the applicability of the BPA to debt-collection practices raises any number of <u>sovereign immunity issues that cannot be waived.</u>" (ADD A20, p 720) [Emphasis added]. They cite two cases for support at FN 21. But again, these cases do not provide support.

1m

Neither has anything to do with the Debt Collection Act or debts. The first was a Title VII 1964 Civil Rights Act violation. The second involved the Back Pay Act, but there was no back pay because the award dealt with expenses instead of pay. More importantly, it was the BPA that was violated here, and it obviously waives sovereign immunity.

115. An illegal garnishment is actually the purest example of a BPA violation: "a withdrawal or reduction in pay." It goes without saying that an illegal garnishment is an unwarranted reduction in pay under the BPA.

## CLAIMS FOR RELIEF

### COUNT ONE

116. As the record shows, in each of these 9 cases, with their demonstrated apparent bias, the majority has violated FEA's and its bargaining unit members' rights to Procedural Due Process under the Fifth Amendment.

### COUNT TWO

117. As the record shows, in each of these 9 cases, the majority has violated FEA's and its bargaining unit members' rights to Substantive Due Process under the Fifth Amendment, as enunciated in *Griffith v. FLRA.*

### COUNT THREE

118. As the record shows, in each of these 9 cases, the majority has acted *ultra vires* in violation of the Federal Service Labor-Management Relations Statute and its legislative history, 5 U.S.C. 7101-7135.

## COUNT FOUR

119. As the record shows, in each of these 9 cases, the majority has exceeded their jurisdiction as enunciated in the Federal Service Labor-Management Relations Statute and its legislative history, 5 U.S.C. 7101-7135, and *Leedom v. Kyne*.

## COUNT FIVE

120. As the record shows, in each of these 9 cases, the majority has acted arbitrarily, capriciously, and abused their discretion, under the Administrative Procedure Act, 5 U.S.C. 706.

## PRAYER FOR RELIEF

FEA respectfully asks this Court to reverse the FLRA Decisions referenced above and render the underlying Arbitration Awards final and binding.

William Howell Freeman, Jr.
DC Fed Dist Ct Bar No. SC 0003
FEA-Europe General Counsel
1201 16th St, NW, #117
Washington, DC 20036
Telephone: (843) 325-0074
Bfreeman@nea.org

Dated: 2/4/19