UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL EDUCATION ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 19-284 (RJL) |
| FEDERAL LABOR RELATIONS AUTHORITY, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

(March 28, 2020) [Dkt. #5]

FILED
MAR 3 0 2020
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

The Federal Education Association ("FEA"), a union representing teachers stationed abroad to educate dependents of U.S. military personnel in U.S. Department of Defense schools, brings this action against the Federal Labor Relations Authority ("FLRA") collaterally attacking two FLRA decisions setting aside arbitration awards. The FLRA moved to dismiss for lack of jurisdiction based on Congress's preclusion of judicial review of FLRA arbitration decisions under 5 U.S.C. § 7123 and for failure to state a claim. Because the FEA fails to state any claims that fall within the very limited exceptions allowing judicial review of FLRA decisions, defendant's motion to dismiss is GRANTED.

**BACKGROUND**

Title VII of the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111, known as the Federal Service Labor-Management Relations Statute ("the Statute"), provides a framework for regulating labor relations for the federal government. *See* 5

U.S.C. §§ 7101–7135. The Federal Labor Relations Authority, created by the Statute, serves a similar role in the public sector as the National Labor Relations Board does in the private sector: it exercises broad adjudicatory, policymaking, and rulemaking powers over labor-management relations. *See id.* § 7105. By statute, the FLRA is an independent body with three full-time members who are appointed by the President and confirmed by the Senate for five-year terms; no more than two members may be from the same political party. *Id.* § 7104.

This suit arises out of two FLRA decisions regarding payroll disputes between the U.S. Department of Defense Education Agency ("the Agency") and the Federal Education Association, the union representing the Agency's teachers. Over the course of a year, Agency teachers typically receive benefits payments to offset the cost of certain expenses. If, at the end of the year, the Agency determines it has overpaid an employee, it engages in debt collection proceedings to recoup any overpayment. These payroll and debt collection practices have been the subject of many FEA grievances that have resulted in arbitration.

Specifically, the FEA filed eight grievances alleging the Agency violated the Debt Collection Act ("DCA"), 5 U.S.C. § 5514; the Back Pay Act ("BPA"), 5 U.S.C. § 5596; and Article 45 of the FEA's collective bargaining agreement with the Agency by failing to provide grievants with certain procedural rights during these debt collection proceedings and by miscalculating their debts. *See U.S. Dep't of Def. Educ. Activity, U.S. Dep't of Def. Dependents Schs.* ("Fees Decision"), 70 FLRA (No. 143) 718, 718 (2018). The arbitrators initially agreed with the FEA and concluded the Agency's actions violated the DCA, the BPA, and Article 45. *Id.* While multistage audits of certain payments and collections were

2

ongoing to determine whether the Agency over-deducted from the grievants' pay, the FEA filed attorney's fees petitions in each of these cases for its work on behalf of teachers in these payroll disputes. *Id.* Though the Agency opposed these attorney's fees petitions, the arbitrators concluded the FEA was entitled to attorney's fees under the BPA. *Id.* at 719. However, the FLRA set aside those attorney's fees awards, holding the Agency is only liable for attorney's fees under the Back Pay Act to the extent grievants can show they have suffered a clear loss of pay. *Id.* at 720. It determined the grievants could not show they "had lost pay to which they were legally entitled" because the audit process was still ongoing. *Id.* The FEA challenges this Fees Decision.

In another arbitration, the FEA grouped together 27 individual grievances alleging the Agency engaged in improper pay practices; the Agency objected that the jointly filed grievance was not procedurally arbitrable because multiple individual grievances that had already been decided could not be grouped together to avoid estoppel and prior deadlines. *See U.S. Dep't of Def. Educ. Activity* ("Procedural Arbitrability Decision"), 70 FLRA (No. 167) 863, 863 (2018). In considering the parties' positions, the arbitrator agreed that "many of the Agency's positions regarding procedural arbitrability . . . could be considered correct" and could "constitut[e] grounds" for dismissing the grievance. *U.S. Dep't of Def. Educ. Activity v. Fed. Educ. Ass'n*, FMCS Case No. 110301-01791-1, at 42–43 (2017) (Sharnoff, Arb.). However, he rejected the Agency's argument after considering "the overwhelmingly compelling 23-year history of improper pay practices by the Agency," *id.* at 44, and held the grievance arbitrable. The FLRA set aside the arbitrator's award, concluding the arbitrator exceeded his authority by "reach[ing] a conclusion that did not

3

concern procedural arbitrability," the sole issue for consideration. Procedural Arbitrability Decision, 70 FLRA at 864. Interpreting the arbitrator's statement that, "but for the . . . history of improper pay practices by the Agency," he would have held the grievance procedurally non-arbitrable, the FLRA determined the arbitrator "disregard[ed] specific limitations on his authority" and failed to limit his consideration to whether the grievance satisfied the procedural conditions in the parties' collective bargaining agreement. *Id.* at 864–65. The FEA also challenges this Procedural Arbitrability Decision.

On February 4, 2019, the FEA brought this suit alleging the FLRA violated the FEA's procedural and substantive due process rights under the Fifth Amendment by exhibiting bias in its decisions against the FEA, acted *ultra vires* and exceeded its jurisdiction under the Federal Service Labor-Management Relations Statute by not deferring to the arbitrators' decisions, and acted arbitrarily and capriciously and abused its discretion under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 501 *et seq. See* Compl. ¶¶ 116–20 [Dkt. #1]. On April 8, 2019, the FLRA moved to dismiss the suit for lack of subject-matter jurisdiction and failure to state a claim.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a federal district court must dismiss claims over which it lacks subject-matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A plaintiff bears the burden of establishing by a preponderance of the evidence that a federal court has jurisdiction over its claims. *Fontaine v. Bank of Am., N.A.*, 43 F. Supp. 3d 1, 3 (D.D.C. 2014); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). While the Court must accept as true all factual allegations in the complaint

when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff's factual allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350).

Under Federal Rule of Civil Procedure 12(b)(6), a federal district court must dismiss claims that do not state a cause of action upon which relief may be granted. A court must dismiss a plaintiff's complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The FLRA asserts that this Court lacks subject-matter jurisdiction over this suit because Congress precluded judicial review over most FLRA arbitration decisions in the Statute. The Statute prohibits judicial review over FLRA decisions "under . . . section 7122 of this title (involving an award by an arbitrator), *unless* the order involves an unfair labor practice." 5 U.S.C. § 7123(a)(1) (emphasis added). Our Circuit Court has interpreted the plain language of the Statute and its legislative history to clearly demonstrate Congress's intent to bar judicial review of FLRA decisions involving an arbitrator's award. *See, e.g., Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 63 (D.C. Cir. 1987). This preclusion "is

5

firmly grounded in the strong Congressional policy favoring arbitration of labor disputes and accordingly granting arbitration results substantial finality." *Id.*

However, the Supreme Court and our Circuit have recognized three limited exceptions to the general preclusion of judicial review of FLRA arbitration decisions: First, where an agency acts "contrary to a specific prohibition" in its statute that is "clear and mandatory," *see Leedom v. Kyne*, 358 U.S. 184, 188 (1958). Second, where the FLRA exceeds its jurisdiction *ultra vires* by applying a statute outside of its expertise in regulating employee working conditions, *see U.S. Dep't of Treasury, U.S. Customs Serv. v. FLRA*, 43 F.3d 682, 689–91 (D.C. Cir. 1994). And third, where a party brings collateral constitutional challenges, *see Griffith v. FLRA*, 842 F.2d 487, 490 (D.C. Cir. 1988). The FEA asserts that each of these exceptions applies, but I disagree.

First, the FEA asserts that the FLRA violated a clear statutory provision when it failed to accord deference to the arbitrators' underlying factual findings. Compl. ¶¶ 66–67, 119. To say the least, this claim does not fall within the "extremely limited scope" of *Leedom* jurisdiction for claims of clear statutory violations, *Griffith*, 842 F.2d at 493. *See U.S. Dep't of Justice v. FLRA*, 981 F.2d 1339, 1342–43 (D.C. Cir. 1993). To qualify for jurisdiction under *Leedom*, "a plaintiff must be able to identify a specific provision of the Act which, although it is 'clear and mandatory,' has nevertheless been violated." *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) (citation omitted). The FEA has not done so. Here, the FEA does not allege that the FLRA exercised a power that had been specifically withheld by statute, nor does it allege that the FLRA failed to perform a duty that was specifically required by statute. The FEA instead

6

argues that the FLRA failed to properly defer to the arbitrators' findings. *See* Compl. ¶ 66; Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Compl. 5–6 [Dkt. #7]. However, the FLRA has statutory authority to review questions of law *de novo* and set aside arbitration awards that are contrary to law. *See* 5 U.S.C. § 7122(a); *U.S. Dep't of Treasury*, 43 F.3d at 686–87. Whether or not the FLRA properly exercised this review authority raises merely a "[g]arden-variety error[] of law or fact" over which this Court does not possess jurisdiction. *Griffith*, 842 F.2d at 493; *see also Physicians Nat'l House Staff Ass'n*, 642 F.2d at 496 ("That the Board may have made an error of fact or law is insufficient; the Board must have acted without statutory authority."). Nor has the FEA shown that barring review would "wholly deprive [it] of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991). I conclude that plaintiff has not satisfied the requirements of establishing *Leedom* jurisdiction and therefore grant defendant's motion to dismiss that claim.

Second, the FEA asserts that the FLRA "exceeded its authority" by reviewing the arbitration awards rather than according absolute deference to the arbitrators' factfinding decisions. Compl. ¶¶ 66, 118. This argument fails for similar reasons as the first. In *U.S. Department of Treasury*, our Circuit Court found jurisdiction to review an FLRA decision because the FLRA exceeded its jurisdiction in interpreting an international trade statute, which it concluded was not "fashioned for the purpose of regulating the working conditions of employees." 43 F.3d at 691. Our Circuit expressly contrasted that international trade statute with the Back Pay Act interpreted by the FLRA here, which the court recognized "undisputedly was designed to deal directly with employee working conditions." *Id.* at

7

689. Under the Federal Service Labor-Management Relations Statute, arbitrators and the FLRA have explicit authority to interpret "any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C). Because the FLRA's decisions interpreting the Back Pay Act here were clearly "within [the FLRA's] purview," *U.S. Dep't of Homeland Sec. v. FLRA*, 784 F.3d 821, 823 (D.C. Cir. 2015), jurisdiction is not proper under *Treasury*. I therefore must dismiss plaintiff's claim that the FLRA "exceeded its authority."[1]

Third, the FEA asserts that the FLRA violated procedural and substantive due process by exhibiting bias in its decisions against the FEA. Compl. ¶¶ 39, 116–17. In *Griffith*, our Circuit Court concluded that "Congress did not intend to cut off review of constitutional claims." 842 F.2d at 489. There, an IRS employee alleged a procedural due process violation when the FLRA set aside a favorable arbitration award regarding a within-grade pay increase and failed to remand her claim to the arbitrator. *Id.* at 494. The court was "convinced that as a general matter Congress intended to preclude judicial review in the district courts of FLRA decisions concerning arbitral awards." *Id.* at 490. However, the court read 5 U.S.C. § 7123, the Statute's judicial review provision, to be "not specific enough to foreclose review" of constitutional challenges to a statute or a particular agency action. *Id.*; *see also id.* at 494. Whether or not a plaintiff has stated a plausible claim of a constitutional violation, however, is another matter entirely. *See id.*

---

[1] Similarly, I must dismiss plaintiff's claim that the FLRA violated the APA, *see* Compl. ¶ 120, as the APA provides no independent basis of judicial review where another statute precludes judicial review. *See* 5 U.S.C. § 701(a)(1); *Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 341–42 (D.C. Cir. 2002).

8

To survive a motion to dismiss a procedural due process claim, a plaintiff must allege both deprivation of a property interest and denial of notice and opportunity to be heard at a meaningful time and in a meaningful nature given the circumstances of the case. *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1331–32 (D.C. Cir. 1991). The FEA asserts that the property interest it was deprived in the Fees Decision is "the back pay and interest 4 different arbitrators have already awarded," Compl. ¶ 42, and that the property interest it was deprived in the Procedural Arbitrability Decision is the money the Agency owes teachers for underpayments and illegally collected from their paychecks, *see* Compl. ¶ 41. However, even assuming the FEA has a property interest in this money, which I need not decide, it has not alleged any facts that support that the FLRA failed to provide notice and an opportunity to be heard. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982). The FEA received notice of the Agency's exceptions to the arbitrators' awards and had an opportunity to and did oppose the exceptions. *See* Fees Decision, 70 FLRA at 719; Procedural Arbitrability Decision, 70 FLRA at 864; *English v. Dist. of Columbia*, 815 F. Supp. 2d 254, 264–65 (D.D.C. 2011) (dismissing procedural due process claim because plaintiff acknowledged that he received notice and availed himself of available post-deprivation procedures). As such, the FEA has failed to state a claim of a procedural due process violation.

To survive a motion to dismiss a substantive due process claim, a plaintiff must allege facts sufficient to show a deprivation of a property interest in circumstances "so egregious" as to "shock the contemporary conscience." *Butera v. Dist. of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001). The FEA claims that "[t]he majority's decisions setting

9

aside 9 different Arbitration Awards here show their apparent bias against FEA bargaining unit members and FEA." Compl. ¶ 39. Unfortunately for the FEA, this Court accords "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). To rebut that presumption, a plaintiff alleging actual bias must show that judges have "in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 509 F.3d 562, 571 (D.C. Cir. 2007). Even assuming the FEA has a property interest at stake here, its allegations of bias are merely supported by a tally of union "wins and losses." *See* Compl. ¶¶ 19–30. To say the least, mathematics of that kind are a legally insufficient basis to establish that decisionmakers have prejudged a case. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The FEA thus has failed to state a claim that its substantive due process rights were violated.

## CONCLUSION

For all the foregoing reasons, defendant's motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim is GRANTED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge